please be seated thank you for the clerk please call the first case of the Thank you. Good morning. Please support counsel for a century ago I can't for the record because it's being recorded right there. My name is John Sturmanis and I represent Guardian West in the workers compensation case filed by petitioner Dennis Corbett. This case is on appeal on a fairly narrow issue and on that particular issue we are arguing it is against the, the finding was against the manifest way to the evidence. A quarter century ago I started my legal career as a staff attorney for the clerk district health court and occasionally I see something written on the briefs by the justices SDA that was code for this is a slam dunk And my concern is when the manifest weight standard comes before the court manifest weight cases are viewed as an SDA and I think that this case doesn't fall under that category the petitioner in this case had an undisputed accident. He inhaled a plume of smoke and aggravated his pulmonary condition, aggravated his COPD. The causation in the case is no longer disputed. We stipulated to the accident. We denied causation to the extent of the petitioner's condition at the time of trial but we're not arguing that point. We're arguing the point of what TTD is owed and what's the nature and extent of the accident. And the reason for the argument is, or the reason for the appeal is the testimony about the job offer about a month after the accident occurred. Commission didn't believe your witness. Commission did not believe the witness but commission's rationale is not supported by the record to while a job offer was not made in writing I don't know why or how that would go against credibility. Well the employer said that the offer was never made to be permanent, number one. And number two, every other time that you offered this claimant anything you put it in writing. And so the commission said it wasn't in writing, it was contrary to what the claimant said. We don't believe the employer's witness. So who judges credibility, us or them? They judge credibility but you bring up a point, the petitioner himself said there was a job offer and that's really my first point. Everybody agrees that there was a job offer. The contention is whether it was temporary or permanent. By petitioner's own testimony and respondents, there was a job that was offered. Petitioner says it was two to three months. At the very least, the TTD period should be reduced by 12 weeks. Let me ask you a point of question. If, as Hinton claimed, the claimant declined a full-time position within his work restrictions for the same salary, wouldn't that be tantamount to quitting his job? He says no, I'm not going to take it. If he declined his position, wouldn't that be tantamount to quitting his job then, leaving the employment voluntarily? Well, leaving the employment voluntarily is also supported by the separation agreement that Mr. Corbett signed and also said was voluntary. Well, that's the question I have. Why did you need a separation agreement if somebody already quit their job? Why would you do that? I really don't know. That's evidence of the fact that he hadn't quit his job, isn't it? It is. That doesn't help Hinton's credibility, does it? I'm sorry? Does that help Hinton's credibility? It doesn't help with Corbett's credibility that there was no job offered that was permanent. I don't think I'm following your point. The point is you've acknowledged, I think, passively, that if he was given this job offer, a permanent offer within his restrictions, and the claimant refuses to take it, that's tantamount to quitting his job, right? That's correct. But why then would the company pay him this generous severance package and have a separation agreement? Why would they give money to somebody who's quit his job? You can just say he quit. Well, that's because that was done after the job offer at the other plant was refused. They changed the scope of the job, and it's only after the new position was offered that the separation agreement was presented. I only bring it up because, as you said, we've got a credibility question. Sometimes when you look to surrounding circumstances, it bears on credibility without directly commenting on what he testified to. That doesn't support his credibility, but go ahead. Had he been released by his physician when this July 30, 2012, job offer was made? He testified that on July 30, 2012, he got a call from Hinton, and Hinton told him he wanted to meet with him. And when they met for lunch at the Champagne Hotel, Hinton told him he was being terminated, and he offered him a severance package, 12-week salary, and a temporary position at the Danville facility. When did that meeting take place? There was two meetings. The first meeting, I assume, was the first date you gave me, which was July 30. The second meeting was sometime the third week of August. The dates aren't absolutely clear. Both witnesses were in agreement as far as the time. Fletcher didn't release him for sedentary work until August? That's correct. And the separation agreement was signed after that. And no doctor ever released a claimant to work his former job full-time, did they? He did have permanent restrictions, that's correct, but his job was one of a supervisory nature. He was a safety director. The new position that was offered was a smaller plant. They changed the scope of the job at the Guardian West plant. And that's my point, that the issue about the performance reviews and Mr. Hinton's credibility were never disputed. The performance reviews speak for themselves. Mr. Hinton never said anything about him not performing, but somehow the performance reviews went against Mr. Hinton. There's nothing Mr. Hinton testified to about his performance. This was an issue that was part of the narrative by the petitioner, and I think once that narrative changed, they still went ahead with it and somehow convinced the commission. But the performance reviews and Hinton's testimony are in no way contradictory. How is that? The performance reviews always describe the claimant as just sort of being a wonderful employee. Right, and as Mr. Hinton said, that's why they wanted to keep him, and they offered him the new position. The plant was doing some reorganization, and that's when the opportunity to provide Mr. Corbett with the new position presented itself. Well, let me hone in on a very specific question. As I understand it, and I make the legitimate argument that the claimant cannot show an impairment of earnings because he, the claimant, declined a bona fide job offer in Danville, correct? Correct. But doesn't that really turn on the credibility of Hinton's testimony? If the commission finds Hinton not to be credible on that issue, where do you end up?  I think you need to examine the rationale for the credibility findings. The rationale for the credibility findings are not supported by the record. Specifically, why are they not supported by the record? It had nothing to do with performance. And the timing wasn't what the arbitrator and commission firm indicated. It didn't happen at the same time. It happened over periods of weeks. It was two separate meetings. The separation agreement was after both of those meetings. So the timing wasn't the same time, despite what the commission said. The offer in writing wasn't a credibility issue, and the employment review on the performance wasn't that issue. So the rationale to question Hinton's testimony is not supported by the record. And it's for that reason that we believe the correct ruling is a man as a whole, because after Corbett refused the light duty or sedentary job, he shouldn't be allowed to profit from that. Again, both parties admit a job was offered. So I think at the very least, it's 12 weeks. That is clearly against the manifest way of the evidence, because there's nothing to the contrary. But the job that was offered was the same salary. Yes, that was what Mr. Hinton testified to, but at the same time, Mr. Corbett did not recall what salary was offered. He just didn't recall. Did the claimant acknowledge it was a permanent position? No, the claimant did not acknowledge it. Okay, he said it was not. Hinton said it was a permanent position. That's right. And the commission didn't believe Hinton. I think they got that wrong. For those reasons I gave, because the credibility question by the commission doesn't make any sense and not supported by the record. Now... What about your TTD argument? Well, first of all, the TTD should at the very least be reduced by 12 weeks, because there's no question that job was offered. And Corbett and Hinton both say that it was rejected. I think the courts got that one wrong. It has to be reduced. There's nothing to the contrary on that front. The bigger issue, of course, is whether this is a wage differential or nature and extent. And, again, that's where the manifest wage argument comes in. I think that the rationale of the commission was wrong. I would point out that Mr. Corbett's credibility wasn't commented on one way or another. If you look at the record, I think it's Corbett that has the real questionable credibility, especially given his absolute denial of preexisting pulmonary issues. He saw his doctor the next day. The doctor the next day after his accident said, significant for COPD. There was multiple x-rays. He was taking COPD inhaler at least. And, of course, the medical record is in 2011 daily. So his testimony is completely in contrast to the record. But I know we're talking about the manifest wage. And we take a close look at the commissioner's rationale for that. It just doesn't stand up. Again, we're not questioning accident. We're not questioning causation. We're just questioning the nature of that job offer and the length of the TTD awarded. The petitioner did ask for it to be in writing according to his testimony. But that was never done. His job was refused. Again, that testimony is unrebutted. And I'd ask the court at the very least to reduce the TTD period and take a close look at the rationale for the commissioner's finding because of what I've outlined before. And unless there's any other questions, I'll reserve time for rebuttal. You'll have five minutes to reply. Yes. Thank you. Thank you. Good morning. Todd Lichtenberger for Mr. Corbett, defendant, appellee. May it please the court, counsel. Counsel, would you mind sitting at counsel table during the spectator session? Thank you. One thing I wanted to clear up since it was asked earlier was the reason for the termination of Mr. Corbett's employment. And the testimony of Mr. Hinton was he said that Corbett's position with Guardian West was terminated because it was beyond his scope of ability and technical competence to carry out day-to-day responsibilities. That was his testimony. That was belied by the records, right? Yes, and that was belied by the records. So, you know, that was just one of the questions asked. I think counsel, I don't know how he answered it, but there wasn't that. Anyway, when Mr. Hinton testified, his credibility was not good for a variety of reasons. First of all, he testified that he didn't even know if the decision to terminate Mr. Corbett was made before or after this work-related accident. So, you know, there was a lot of unclearness with regards to that issue. He did testify that Petitioner was terminated due to performance issues. And Mr. Hinton himself, though, signed off on Petitioner's most recent performance review, which was seven months earlier, and frankly, it couldn't have been any better. He got the highest mark in every category. And so in that regards, first of all, Mr. Hinton's testimony was highly inconsistent. Next, he testified that he offered the Petitioner permanent employment within his restrictions. The testimony was that these two met on July 31st, and at that point, Dr. Fletcher had Mr. Corbett off work. He didn't even have any work restrictions. And so I'm not sure how he could have offered him work within any restrictions because there were no restrictions at that time. Dr. Fletcher ultimately put him on light-duty restrictions on August 20th, which was sedentary sit-down work only. The testimony and the evidence of the record was during that first meeting between Mr. Corbett and Mr. Hinton that Mr. Hinton offered him some type of position. Mr. Corbett said that he told him it was two to three months of temporary work while they transitioned him. Mr. Corbett testified that he asked Mr. Hinton, I'll need something in writing. I can't just accept this type of job. You haven't told me what I'm going to be doing. You've told me it's going to be in Danville. You haven't told me what my hours are. You haven't told me what my rate of pay is. I need some specificity. I can't just accept the job under those circumstances. Who could? And you're not arguing the fact that the alleged offer was never reduced to writing is controlling, are you? I've never made the argument that there was some legal requirement to be put into writing. The argument always was that the failure to have any documentation, all in this case by Guardian West, belies their argument, and it shows a lack of credibility on their part. They didn't have any trouble reducing the separation agreement into writing. Why couldn't they have put something in writing with regards to this supposed offer if it was really made? And to the point that was brought up earlier, this is the question I've asked the whole time, if, in fact, they made him an offer and he, in fact, refused to take that job, wouldn't that have been him voluntarily resigning? Why would they have needed a separation agreement? That's why I asked him. Contrary to common sense. If he would have terminated his employment, that would have been the end of it. Instead, what Mr. Corbett said was that he asked them to put it in writing. They met again about two weeks later. And when he showed up, Mr. Hinton presented him with the separation agreement, not a written description of the job offer. And the only reason it wasn't entered into at that time was because Mr. Corbett told him, look, I'm not signing anything until I have my attorney take a look at this. And then it was signed at some point after that. Who do you make of his argument that the claimant's account of the job offer lacked credibility because he misrepresented the extent of his prior achievements for COPE? Does that bear on any issue, Chuck? I don't think that that bears any issue. In this case, it's not that inconsistent. The petitioner was asked about his prior condition, and what he said was he denied breathing issues, problems or issues before the accident, but testified that he had been to the doctor for colds and flus. First of all, I think it's reasonable to think in the context of being questioned here and what was going on that Mr. Corbett was thinking in terms of his condition at the time of the trial as opposed to his condition before the accident. And so what we see is, in evidence in this case, there was 11 years of medical records prior to the date of accident. During those 11 years, on five occasions, Mr. Corbett had gone in and presented with some kind of symptoms that could arguably be called breathing problems. In April of 2001, he presented with some left ear pressure. In May of 2001, he presented and was diagnosed with asthmatic bronchitis. Then there's no treatment for over seven years. In December of 2008, he went in to see his family doctor, and it says diagnosis COPE and bronchitis. Again, no treatment for over two years. In January of 2011, he went in for sinusitis. And then again, November of 2011, cold and chest congestion. At no time in that 11 years was he ever seen by a pulmonologist. At no time in that 11 years was he ever given any kind of a pulmonary function test or any spirometry or anything to show any breathing deficits.  However, he was the company doctor at the time all this happened, and he testified on behalf of Mr. Corbett and said that he had worked with Mr. Corbett regularly for 10 years and had never noticed him exhibiting any kind of breathing issues whatsoever while on the job. And so it seems credible that there were no significant preexisting conditions. Now look at his condition after that. Mr. Corbett, by the time of the trial, had been seen by Dr. Fletcher I believe in excess of 20 times. By that time, he had been seen by three different pulmonary specialists, and he had had approximately 20 pulmonary function tests after the chemical accident. And the results of those spirometry tests was an average of 53% of what would be considered normal, regular breathing. So he had suffered significant, significant problems after this chemical exposure in the plant. Well, Fletcher opined that the claimant's disabling condition and his sedentary work restrictions were permanent, right? Correct. That became his permanent restriction. Counsel, can I ask you about TTD here? Yes. Dr. Fletcher released your client to sedentary work on August 20, 2012. Is that right? Yes. Why would your client be entitled to TTD following that date? Understanding that there is testimony that he wasn't at MMI at that point, but there is now a case law, specifically the Holliker case by this court last year, that would indicate that if the claimant is capable of returning to work, he is no longer entitled to TTD, notwithstanding he hasn't reached MMI. I really can't answer that other than, you know, based upon that reason, I know at the time he was looking for work. Once he got released, he didn't have a job, and he took a job as soon as he could find one and started working again. That was the Halcon job? Yes. And that was part-time? And that was a part-time job. He took that so he could start getting some income, and then he eventually took a full-time position. I did also want to address counsel's argument with regards to the order of TTD being reversed after the supposed job offer was being made. I would just say this, that there would be no basis to take it away because there were no terms of the job offer. So if there wasn't a dollar amount given to him, how could we calculate any type of salary at that point, not to mention the fact, as I said before, he wasn't on work restrictions at that time. He was off work. Unless there are any other questions, that's all I have. I don't believe there are. Thank you, counsel. Counsel, you may reply. I'll touch on the last point with the salary. The salary was the same. That's what Mr. Kessler testified to, and Mr. Corbett didn't recall. So that's the basis for the TTD. Basically, TTD should not be awarded for those 12 weeks in the event that you believe the job offer was temporary as opposed to permanent because of the credibility of Mr. Hinton. The job offer, even Mr. Corbett agrees that that job offer was made and you declined before the separation agreement. And here's the testimony, page 60 of the transcript. After you declined the offer, you were presented with this release and separation. Correct. With regards to the breathing issue, he was asked specifically prior to July 18, 2012, that's the accident date, have you ever been diagnosed with any kind of breathing or lung problems? No, sir, no. Have you ever had any treatment for breathing or lung problems? No. The record shows he has a diagnosis of COPD. He had chest x-rays. He was taking two different kinds of inhalers. He at one point even had a pulmonary examination. That was in 2001, but still there was quite a bit of diagnosis and treatment for lung condition. He was told to quit smoking. He was a long-time smoker, so it makes sense that he would have these types of problems. With regard to Mr. Hinton's job offer, the job offer was made because Mr. Hinton wanted to keep him on the scope of the job at the Urbana-Guardian West Change. And that's what Mr. Hinton testified to. He wanted to keep Mr. Corbett employed. It was a scope of job change, and there is some reorganization. And it's correct that Mr. Hinton did not recall whether it was before or after the accident when these decisions were made because the accident didn't really have anything to do with it. Thank you. Thank you, Counsel Bolt. This matter will be taken under advisement. The written disposition shall...